# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ROBERT M. CHANDLER, JR., § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-05-4279 |
| § | |
| WATERWOOD NATIONAL § | |
| ASSOCIATES, L.P., *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

Robert Chandler sued his former employer, Waterwood National Associates, L.P. and Club Consultants, Inc., (CCI),[1] alleging that he was fired because of racial discrimination and retaliation. Waterwood and CCI have moved to dismiss on the basis that Chandler signed an agreement to arbitrate disputes relating to his employment. (Docket Entry No. 9). Chandler opposes the motion on the grounds that the agreement is unenforceable because it is binding only on the employee and illusory because the employer could change it at any time. Based on a careful review of the pleadings, the motion and response, the parties' submissions, and the applicable law, this court grants the motion to dismiss. The reasons are explained below.

---

[1] Defendants assert that Chandler worked only for Waterwood National Associates, L.P.

**I.     Background**

When Chandler began work at Waterwood on August 8, 2002, he signed a document that had two sections. The document stated that by signing, the employee acknowledged receiving a copy of the "Employee Handbook" and agreed to follow the terms and conditions. The first section of the document was headed "CONSENT TO DRUG AND ALCOHOL TESTING." In this first section, the employee agreed to drug testing as a condition of employment in certain circumstances. The second section was entitled "GRIEVANCES, TERMINATION & AUTHORIZATIONS FOR DEDUCTIONS." This section included the following provision:

> The termination, whether voluntary or involuntary, will be handled in an orderly and professional manner. I will not create any gossip or disturbance. I understand that I have the right to discuss the reason for termination, if any, and any grievances with my Supervisor. If I feel that discussing my termination or grievance with my Supervisor is inappropriate, then I should contact the next level of supervision or my employer's corporate office immediately. I agree to resolve any disputes, if necessary, through binding arbitration under the Code of Procedure of the American Arbitration Association.

(Docket Entry No. 9, Att. 1). Chandler signed this document below a paragraph stating that he had read it, understood it, and agreed to its conditions. (*Id.*).

Chandler also received a copy of the Employee Handbook. That Handbook had several sections. The "INTRODUCTION" made it clear that the employment was "at will." The next section, entitled "BENEFITS," addressed holidays and holiday pay, vacations, sick leave, insurance, overtime, performance evaluations, and similar topics. The next section,

entitled "POLICIES & GUIDELINES," addressed equal employment opportunity guidelines, antidiscrimination and sexual harassment guidelines, corrective measures, the Americans with Disabilities Act, drug and alcohol policy, employee background investigations and, most important for this case, dispute resolution.  The "Dispute Resolution" paragraph stated as follows:

> Waterwood National Resort has established a policy to deal with disputes between the employee and Waterwood National Resort when the parties cannot agree upon a satisfactory and equitable resolution of the dispute or claim.  Waterwood National Resort and the employee agree that any dispute between them or claim by either against the other shall be resolved by binding arbitration under the Code of Procedure of the American Arbitration Association and that the judgment upon the award may be entered in any court of competent jurisdiction.

(Docket Entry No. 9, Ex. B).  The next section of the Handbook is entitled "WORK RULES."  This section listed actions that would result in disciplinary action, including discharge; defined the "work day"; identified the dress code and work station standards; set rules for telephone calls; and discussed leaves of absence, the requirements for leave under the Family and Medical Leave Act, safety guidelines and rules, and disciplinary actions. The last paragraph of this section stated that Waterwood "reserves the right at its discretion to suspend at any time, modify, change, or revoke these work rules."  Finally, a "CONCLUSION" paragraph stated that Waterwood had "made a conscientious effort to provide you with a working environment that will be enjoyable and safe.  Benefits are being provided to you that should offer protection against unforeseen accidents.  Fair compensation is being paid to you and in return, you are asked to do your best to make Waterwood National

Resort successful and abide by the policies and guidelines contained herein. Thank you for your commitment and dedication." (*Id*.).

The issue is the enforceability of the arbitration provision.

**II.     Analysis**

"Courts adjudicating a motion to compel arbitration engage in a two-step process." *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003). The first step is to determine if the parties agreed to arbitrate the dispute. *Id*. (internal quotation omitted). This determination is made by applying "the contract law of the particular state that governs the agreement." *Washington Mutual Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (internal quotations omitted). Once the court finds that the parties agreed to arbitrate, the second step is to determine "whether legal constraints external to the parties' agreement foreclose[ ]" arbitration of the claims. *Hadnot*, 344 F.3d at 476 (internal quotation omitted).

Chandler argues that the arbitration agreement is unenforceable because it lacks mutuality. Chandler relies on the language of the document he signed, in which he agreed to resolve any disputes relating to his employment through binding arbitration under the rules of the American Arbitration Association. Chandler's argument does not take into account the Employee Handbook, which clearly states that both Waterwood National Resort and the employee agree that any dispute or claim between them would be resolved by binding

4

arbitration under the rules of the American Arbitration Association. The fact that this Handbook is not separately signed does not make the clause unenforceable; Texas law and the Federal Arbitration Act do not require arbitration clauses to be signed, so long as they are written and the parties agree to them. See *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005). The agreement is mutual.

Chandler also asserts that the arbitration provision cannot be enforced because the Handbook provides that it can be altered at any time. Texas's highest court has recently addressed similar issues. In *In re Halliburton*, 80 S.W.3d 566 (Tex. 2002), the employer notified employees of a new alternative dispute resolution program that required both the employer and the employees to submit all employment-related disputes to binding arbitration. *Id*. at 568. The terms included the employer's right to modify or discontinue the program, but also required the employer to give its employees notice of any changes and stated that any amendments would apply only prospectively. The language stated that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment." *Id.* at 569–70. The language also provided that "termination [of the Program] shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id*. at 570. The Texas Supreme Court held that because the employer could not "avoid its promise to arbitrate by amending the provision or terminating it altogether," the provision was not illusory. *Id*. Similarly, in *In re AdvancePCS Health L.P.*, 172 S.W.3d at 607, the Court held that an arbitration clause allowing one party to amend on 30-day notice did not

make the clause illusory. In the present case, the Handbook does not contain a provision allowing Waterwood to change or cancel the arbitration provision at its discretion. Rather, the Handbook section on "WORK RULES" states that Waterwood "reserves the right at its discretion to suspend at any time, modify, change, or revoke these work rules." Nothing in the Handbook allows Waterwood unilaterally to change the "POLICIES AND GUIDELINES," including the section on "Dispute Resolution."

Finally, the general exhortation in the "CONCLUSION" section of the Handbook that all employees are to do their best to make the company successful and follow the policies and procedures does not undermine the mandatory nature of the arbitration provision. The provision is enforceable.

It is undisputed that the broad arbitration clause covers this litigation. Under section 3 of the Federal Arbitration Act, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration. . . ." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The Fifth Circuit has interpreted this language to mean that the district court cannot deny a stay when one is properly requested, not to limit dismissal of a case in the proper circumstances. If all the issues raised before the district court are arbitrable, dismissal of the case is appropriate. *Id*

**III.     Conclusion**

The motion to dismiss is granted in order to permit the arbitration to proceed.

SIGNED on April 19, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge